# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH E. ORFANO, an individual, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:12-cv-00970-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| NV ENERGY, INC., a corporation, d/b/a NV ) | |
| ENERGY, and DOES and ROES 1-50, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is a Motion for Summary Judgment (ECF No. 44) filed by Defendant NV Energy, Inc.; Plaintiff Joseph E. Orfano ("Plaintiff") filed a Response (ECF No. 48), and Defendant filed a Reply (ECF No. 51). For the reasons discussed below, Defendant's Motion is **GRANTED**.

## I.     BACKGROUND

This case arises from the termination of Plaintiff's employment with Defendant NV Energy, Inc. ("Defendant" or "NV Energy"). (Am. Compl. ¶ 10, ECF No. 10). Plaintiff's Amended Complaint alleges that Defendant hired Plaintiff on September 6, 2005. (*Id.* at ¶ 6). While employed by Defendant, "Plaintiff was a vested participant and vested in the NV Energy 401(k) Plan." (*Id.* at ¶ 3). During this time, Plaintiff was also a "vested participant in the NV Energy Retirement Plan." (*Id.* at ¶ 4). Throughout Plaintiff's employment, he "directly supervised two (2) employees and was responsible for approximately twenty-one (21) employees" without ever being "counseled about his behavior in the workplace." (*Id.* at ¶¶ 7–8).

The Amended Complaint claims that on June 9, 2011, Plaintiff received a letter terminating him from his position as "Assistant Treasurer and Director Capital Markets

effective on June 3, 2011." (*Id.* at ¶ 10).  Defendant represented to Plaintiff that this termination resulted from allegations by a co-worker. (*Id.* at ¶¶ 9, 12).  Plaintiff, on the other hand, alleges that "he was terminated without cause as a pretext to avoid the expense of contributions on his behalf" by Defendant to Plaintiff's 401(k) and Retirement plans. (*Id.* at ¶ 11).

After his termination, Plaintiff filed the instant lawsuit alleging one cause of action for "violation of ERISA." (*See generally* Compl., ECF No. 1).  Defendant subsequently filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 6).  Thereafter, Plaintiff filed an Amended Complaint. (ECF No. 10).  In response, Defendant filed a Motion to Dismiss (ECF No. 14) and Motion for Sanctions (ECF No. 15).  The Court denied both motions. (*See* Order, ECF No. 20). Subsequently, Defendant filed the instant Motion for Summary Judgment. (ECF No. 44).

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id*. at 249–50.

## III.   <u>DISCUSSION</u>

In his only claim for relief, Plaintiff alleges that Defendant terminated his employment to avoid the expense of contributions to his 401(k) and pension plans in violation of 29 U.S.C. § 1140. (Am. Compl. ¶ 11).  Defendant moves for summary judgment as to this claim, arguing that: 1) Plaintiff has failed to establish a *prima facie* case of discrimination; and 2) even if he had, Plaintiff has failed to carry his burden of showing that Defendant's purported reasons for terminating Plaintiff's employment were a pretext for discrimination. (Def.'s Mot. for Summ. J. 16:4, 18:25–26, ECF No. 44).

Section 510 of the Employee Retirement Income Security Act ("ERISA") provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." ERISA, § 510, 29 U.S.C. § 1140.  The Ninth Circuit "[has] adopted the *McDonnell Douglas* burden-shifting framework for assessing an employer's liability for discriminatory interference with a plaintiff's exercise of protected rights under section [1140]." *Lessard v. Applied Risk Management,* 307 F.3d 1020, 1025 (9th Cir. 2002) (citing *Ritter v. Hughes Aircraft Co.,* 58 F.3d 454, 457 (9th Cir. 1995)).  Under this framework, a plaintiff must first make out a *prima facie* case of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981).  If a plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 255.  If the defendant can articulate a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff to then demonstrate that the

defendant's proffered reason is a mere pretext for discrimination. *See id.* at 253.

Accordingly, to establish a *prima facie* case of discrimination, Plaintiff must establish that he: 1) belonged to a protected group; 2) was qualified for the position; and 3) was discharged or denied employment under circumstances that give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).  Defendant asserts that Plaintiff has failed to create a triable issue of fact that he was terminated under circumstances giving rise to an inference of discrimination because he has not offered any evidence that Defendant acted with a "specific intent" to violate 29 U.S.C. § 1140. (Def.'s Mot. for Summ. J. 16:13–16).

To support his claim that he was terminated under circumstances that give rise to an inference of discrimination, Plaintiff asserts that four other high level employees were terminated around the same time as Plaintiff, and these terminated employees "earned substantial salaries and were of substantial cost to NV Energy in contributions to the benefit plans." (Response 8:27–9:1).  Moreover, Plaintiff asserts that the "reduction in the level of required contributions to NV Energy's benefit plans reduced NV Energy's liability and made the company much more attractive to potential suitors." (*Id.* 9:6–9).  In summary, Plaintiff opines that "[i]t is clear that in October of 2010, NV Energy, with the help of their hired financial advisors, undertook a plan to make the company more attractive for acquisition.  As a result, [Plaintiff] and several other high level employees were terminated to relieve NV Energy's books of financial liability." (*Id.* 9:20–26).

To support these assertions, Plaintiff attaches a declaration asserting the termination of four employees about the same time as Plaintiff's termination. (Ex. 1 to Response, ECF No. 48-1).  Additionally, Plaintiff attaches news articles and a Schedule 14A regarding Defendant's desire to be acquired and its subsequent merger. (Exs. 3–4, 6 to Response, ECF Nos. 48-3, 48-4, 48-6).  Finally, Plaintiff attaches a response to an information request listing Defendant's

EEOC claims filed by terminated employees between January 2012 and February 2013. (Ex. 5 to Response, ECF No. 48-5).  Of the six claims filed, Plaintiff's claim is the only claim alleging ERISA violations. (*Id.*).

However, Plaintiff's assertions and supporting evidence fail to demonstrate that Defendant acted with a specific intent to interfere with his ERISA rights.  Plaintiff provides no factual evidence showing a causal connection between the termination of himself and four other employees and Defendant's desire to be acquired.  Although "[t]he nature of the plaintiff's burden of proof at the *prima facie* stage is *de minimus*[,]" *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988); an inference of discrimination "may not be created by mere subjective belief or debatable assertions." *Little v. Cox's Supermarkets,* 71 F.3d 637, 643 (7th Cir. 1995).  Furthermore, Plaintiff's argument is further weakened by Defendant's assertion with supporting factual evidence that "NV Energy hired individuals to replace each of the four other former employees [Plaintiff] identified, thereby eliminating any alleged potential savings from their departures," and "[a]ll the replacements were eligible for the same benefits as those that departed the Company, and they all participated in the Company's 401(k) and pension plans." (Reply 3:17–21, ECF No. 51; *see also* Ex. 31 to Response ¶¶ 1–5).  Therefore, the Court finds that Plaintiff has failed to establish a *prima facie* case of discrimination.

Even though Plaintiff has failed to establish a *prima facie* case of discrimination, the Court will proceed with the remaining analysis under the *McDonell Douglas* framework. Under this framework, Defendant must be able to articulate a legitimate non-discriminatory reason for terminating Plaintiff's employment. *Burdine,* 450 U.S. at 255.  Defendant explains that their $7,000 yearly contribution to the pension plan for Plaintiff was only .0003 of their twenty-one million dollar total pension plan cost. (Response 4:3–8).  Additionally, Defendant notes that Plaintiff was not even contributing to the 401(k) plan when he was terminated, so the Defendant had no duty to match his contributions and could not have planned to benefit in that

regard by terminating Plaintiff. (Response 2:21–25, n. 1).

Defendant's stated reason for terminating Plaintiff's employment is based upon violations of company policy after an independent investigation substantiated a female employee's complaint about differential treatment by Plaintiff based upon her gender. (Def.'s Mot. for Summ. J. 7:3–14:3).  Paula Maixner ("Maixner") submitted a formal complaint to Punam Mathur ("Mathur"), Vice President of Human Resources at NV Energy, complaining that Plaintiff was "unfairly criticizing her performance and otherwise treating her unfairly in the workplace and discriminating against her because of her sex and age." (*Id.* 9:3–6; *see also* Exs. 19–20 to Mot. for Summ. J., ECF Nos. 44-19, 44-20).

Defendant retained Bonnie Drinkwater ("Drinkwater"), an attorney for the Drinkwater Law Offices, to investigate Maixner's complaint and determine whether any violation of company policy had occurred. (*Id.* 9:19–22; *see also* Ex. 4 to Mot. for Summ. J. ¶¶ 1–2, ECF Nos. 44-4).  Defendant further alleges that "[b]ased upon Maixner's statements in her complaint, Drinkwater determined which employees she would interview, ultimately interviewing [] 10 employees," including Maixner and Defendant. (*Id.* 10:7–10; *see also* Ex. 27 to Mot. for Summ. J. 56:7–15, 60:2–11, ECF No. 44-28).  "After interviewing the witnesses and reviewing documents provided by [Plaintiff] and Maixner, Drinkwater determined that [Plaintiff] had treated Maixner differently because of her sex and that [Plaintiff] had a male bias and was not making decisions based upon principles of equal employment." (*Id.* 10:16–18; *see also* Ex. 4 to Mot. for Summ. J. ¶¶ 4–5).  Drinkwater concluded that Plaintiff had violated various company policies. (*Id.* 13:10–11; *see also* Ex. 27 to Mot. for Summ. J. 55:1–6). Following the investigation, Drinkwater communicated her findings to Mathur and Dilek Samil ("Samil"), and Samil determined that, as a result of Drinkwater's investigation, Plaintiff should be terminated. (*Id.* 13:20–22; *see also* Ex. 2 to Mot. for Summ. J. ¶¶2–7, ECF No. 44-2; Ex. 21 to Mot. for Summ. J., ECF No. 44-21).  Accordingly, Plaintiff was terminated on June 3, 2011.

(Ex. 21 to Mot. for Summ. J.).  The Court finds that Defendant has successfully articulated a legitimate, non-discriminatory reason for terminating Plaintiff.

Because Defendant has successfully articulated a legitimate, non-discriminatory reason for terminating Plaintiff, the burden shifts back to Plaintiff to establish that Defendant's stated reason was pretextual and that his employment was actually terminated "because of a specific intent to interfere with [his] ERISA rights." *Dytrt v. Mountain State Tel. & Tel. Co.,* 921 F.2d 889, 896 (9th Cir. 1990).  "[N]o action lies, where the alleged loss of rights is a mere consequence as opposed to a motivating factor behind the termination." *Id.* (citing *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 881 (9th Cir. 1989)).  A plaintiff can show pretext by demonstrating that the employer's stated reason is "unworthy of credence." *Burdine,* 450 U.S. at 256.  Moreover, where the defendant's stated reason for the termination is the plaintiff's violation of a workplace rule, the plaintiff must present evidence that "he did not violate the rule or that, if she did, the defendant selectively enforced the rule in a discriminatory manner." *Williams v. Agilent Techs.,* 2004 WL 2780811 at *4 (N.D. Cal. Dec. 3, 2004) (citing *Fong v. American Airlines, Inc.,* 626 F.2d 759, 762 (9th Cir. 1980) (holding, in Title VII race discrimination case, where plaintiff conceded violation of workplace rule against theft and offered no evidence that the rule was not enforced against similarly situated persons of races other than that of plaintiff, plaintiff failed to demonstrate *prima facie* case).

Courts must take great care when determining if summary judgment is appropriate where issues of motivation and intent are involved, as these issues inevitably present evidentiary difficulties. *Dytrt,* 921 F.2d at 896.  However, "a party against whom summary judgment is sought is not entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element." *Id.*  To survive summary judgment, Plaintiff must do more than merely challenge the judgment of Defendant through the lens of his own self-interested assertions. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir. 1986).  "There

1    must be some indication that he can produce the requisite quantum of evidence to enable him to

2    reach the jury with his claim." *Dytryt,* 921 F.2d at 896 (quoting *Hahn v. Sargent,* 523 F.2d 461,

3    468 (1st Cir. 1975)).

4         Plaintiff admits that four women interviewed told the investigator that Plaintiff favored

5    men over women, yet he argues that the investigation by Drinkwater "was nothing more than a

6    ruse to terminate [Plaintiff] from his position." (Response 10:14–15).  First, Plaintiff attempts

7    to argue that the investigation was "flawed from the beginning" merely because Drinkwater is

8    female. (*Id.* 10:14–18).  Ironically, Plaintiff asserts that, had Defendant "wanted to show that

9    the investigator was independent and neutral without bias, they would have hired a male

10   investigator." (*Id.* 10:18–20).  Plaintiff does not cite any case law or evidence requiring the

11   hiring of a male investigator to establish that an independent investigation is without bias.

12   Rather, Plaintiff merely uses Drinkwater's gender as the basis of her "perceived bias."

13   Surprisingly, Plaintiff seemingly resorts to gender discrimination in support of his argument

14   that his termination (for treating employees differently based upon their gender), was based on

15   a gender-biased investigation and therefore, pretextual.

16        Next, Plaintiff argues that Drinkwater was "spoon fed [] information that [Defendant]

17   wanted her to have to lead to the result that they wanted – [Plaintiff]'s termination." (*Id.* 11:2–

18   4).  To support this argument, Plaintiff argues, citing to the deposition of Drinkwater, that

19   Defendant and Maixner provided Drinkwater with the individuals to be interviewed. (*Id.*

20   10:27–28 (citing Ex. 8 to Response 26:16–23, ECF No. 48-8)).  However, in her deposition,

21   Drinkwater merely states that she built her witness list from Maixner's complaint. (Ex. 8 to

22   Response 26:16–23).  Plaintiff fails to show how Drinkwater's method of compiling her

23   witness list demonstrates that Defendant's reason for Plaintiff's termination was pretextual.

24   Rather, Plaintiff appears to be challenging the judgment of Defendant through the lens of his

25   own self-interested assertions.

Finally, Plaintiff challenges the findings of the investigation, asserting that "the allegation of [Plaintiff] discriminating against [] Maixner based upon her gender is unproven." (Response 11:6–7). Plaintiff demonstrates that of the ten interviews conducted by Drinkwater, only six were cited in Defendant's motion. (*Id.* 11:28–12:1). Plaintiff speculates that "[i]t can only be assumed that the other four (4) had nothing derogatory to say about [Plaintiff]." (*Id.* 12:2–3). Again, assertions made upon mere assumptions without evidence are insufficient. Plaintiff fails to assert how the information obtained from the other four individuals interviewed would have led an independent male investigator to reach a different conclusion about Plaintiff. In fact, Gerry Hubbard, who was interviewed, provided more damaging information such that Plaintiff was biased towards males, treated Maixner "very" poorly, and other negative descriptions. (Ex. 4 to Mot. for Summ. J. ¶ 5; Ex. 28 at 48:17–49:9).

Plaintiff has not demonstrated actual or intended financial savings to the Defendant and therefore, has failed to establish that it was a plausible motivating force sufficient to evince pretext. Thus, the evidence presented by Plaintiff is insufficient to raise a genuine issue of material fact that Defendant's "proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256.

Accordingly, the Court finds that Defendant is entitled to summary judgment as a matter of law because Plaintiff has failed to raise a genuine issue of material fact that Defendant terminated him to prevent attainment of benefits.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 44) is **GRANTED**. The Clerk of the Court shall enter judgment accordingly.

**DATED** this 3rd day of February, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge